# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs September 9, 2014

## STATE OF TENNESSEE v. ERIC T. GILBERT

**Appeal from the Circuit Court for Robertson County**
**No. 74CC2-2012-CR-579     Michael R. Jones, Judge**

---

**No. M2014-00473-CCA-R3-CD - Filed November 18, 2014**

---

The defendant, Eric T. Gilbert, appeals the Robertson County Circuit Court's order revoking his probation and ordering him to serve the balance of his five-year sentence in confinement. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); and Collier Goodlett, Assistant District Public Defender (at hearing), for the appellant, Eric T. Gilbert.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On March 8, 2013, the defendant, originally charged with aggravated robbery, entered a plea of no contest to a reduced charge of robbery in exchange for a sentence of five years to be served on probation. On December 19, 2013, a probation violation warrant issued alleging that the defendant violated the terms of his probation by being arrested for theft. On January 15, 2014, an amended probation violation warrant issued, which warrant added allegations that the defendant violated the terms of his probation by refusing his probation officer's request to search his residence, by testing positive for the use of marijuana and opiates, and by possessing marijuana. A second amended probation violation warrant issued on February 3, 2014, alleging that the defendant also violated the terms of his probation by

possessing a firearm.

At the February 7, 2014 revocation hearing, the State indicated that it would proceed solely on the allegations that the defendant violated his probation by committing theft and by refusing to allow a search of his residence.

Stephanie Tull testified that around Christmas of 2013, she began searching for a car stereo system to give her 17-year-old stepson. At some point, her cousin, Amanda Clack, telephoned her and said that Ms. Tull could come to Ms. Clack's residence to look at a stereo system that might meet her needs. Ms. Tull went to Ms. Clack's residence on December 18, 2013, and there met the defendant, who showed her the stereo system he had for sale. She agreed to purchase the stereo system, and as she gave the defendant the agreed upon $300, she observed "a gun in the passenger seat" of the defendant's vehicle. Then, the defendant took her money without giving her any part of the stereo system and "fled off." Ms. Clack telephoned the defendant, but he did not answer. Ms. Tull then telephoned the police. She identified the defendant in court as the man who took her money.

During cross-examination, Ms. Tull testified that she became familiar with various handguns during her time as a police officer in Corinth, Mississippi, and that the handgun in the defendant's car appeared to be a real gun.

Ms. Clack testified that she arranged for Ms. Tull to purchase a stereo system from the defendant and that Ms. Tull and the defendant came to Ms. Clack's residence for Ms. Tull to examine the stereo system. The defendant showed Ms. Tull and Ms. Clack the stereo system without getting out of his car, and after Ms. Tull gave him the money, "he just . . . took off" without giving Ms. Tull the stereo system. Ms. Clack observed a black handgun in the passenger seat of the defendant's car. After he left, Ms. Clack sent the defendant a text message warning him to return in five minutes "or she's going to press charges."

Springfield Police Department Officer William Harris responded to Ms. Tull's call, and, utilizing descriptive information provided by the two women about the defendant and the car he was driving as well as the defendant's driver's license information, he located the defendant at his residence. The defendant's car was parked in the driveway, and the defendant was standing outside the residence talking on the telephone. Officer Harris observed a stereo and an amplifier in the defendant's car. The defendant refused to speak to Officer Harris without a lawyer present. He searched the defendant's car but did not find a gun. Officer Harris placed the defendant under arrest.

Greg Tinsley, the defendant's probation officer, testified that one of the

conditions of the defendant's probation required that he submit to a warrantless search of his residence "by any probation/parole or law-enforcement officer at any time." After learning of the defendant's theft arrest and the circumstances of that offense, Mr. Tinsley, along with a fellow probation officer and Agent Davenport of "the investigation and compliance" unit, went to the defendant's residence on December 20, 2013, to serve a probation violation warrant and to search the defendant's residence. He made contact with the defendant just after the defendant exited his residence and told the defendant "that we had a warrant for his arrest and . . . Agent Davenport asked him at that time if we could search . . . the vehicle and the residence." The defendant refused, and Mr. Tinsley told the defendant that his refusal "would be an amended violation." Mr. Tinsley could not "recall the specifics" of the defendant's response to that information, "but [the defendant] did not seem to care" that his refusal amounted to a violation of the terms of his probation. Mr. Tinsley said that they did not attempt to search the house by force.

During cross-examination, Mr. Tinsley said that it is his general practice to wait for the arrival of local police officers before serving a probation violation warrant and attempting a search, but the officers had not arrived by the time the defendant exited his residence.

Based upon this evidence, the trial court concluded that the State had established by a preponderance of the evidence that the defendant violated the terms of his probation by stealing $300 from Ms. Tull and by refusing Agent Davenport's request to search his residence.

The defendant testified for the limited purpose of establishing the propriety of his being returned to probation following the revocation. He said that he had "had numerous amounts of jobs" in both Tennessee and out of state. The defendant said that he had family in the area and that he had never failed to appear for any court date. Similarly, he had never failed to report to his probation officer. He admitted having tested positive for the use of opiates and marijuana, but he claimed that he had been taking Percocet prescribed to him following a car accident. He said that he had paid restitution to the robbery victim and had paid his fines in a timely manner. He admitted, however, that he was behind on his probation fees.

Based upon the defendant's violations, the similarity between the conviction offense and the theft of Ms. Tull's money, and the fact that the defendant spent nearly a year in jail before entering his no contest plea, the court ordered that the defendant serve the balance of his sentence in confinement.

In this appeal, the defendant challenges the trial court's order of confinement.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence. . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, the original judgment so rendered by the trial judge shall be in full force and effect from the date of the revocation of such suspension. *Id.* § 40-35-310(a).

The evidence adduced at the revocation hearing established an adequate basis for the revocation of the defendant's probation, and the defendant concedes as much on appeal. The defendant claims only that the trial court should not have ordered total confinement but instead should have added two years to the term of probation as authorized by Code section 40-35-308. *See* T.C.A. § 40-35-308(c). The law is well-settled, however, that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that a defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE